UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CARLOS H. McKENSI,            )
                              )
        Plaintiff,            )
                              )
v.                            )        CIVIL ACTION
                              )        NO. 09-11940-JGD
BANK OF AMERICA, N.A.,        )
                              )
        Defendant.            )

**MEMORANDUM OF DECISION AND ORDER ON
PLAINTIFF'S MOTION TO AMEND COMPLAINT**

September 22, 2010

DEIN, U.S.M.J.

### I. INTRODUCTION

The plaintiff Carlos H. McKensi ("McKensi") is seeking to file a First Amended Complaint (Docket No. 18) against Bank of America, N.A. (the "Bank"), the assignee of a mortgage and note originally issued by SouthStar Funding, LLC ("SouthStar").[1] The Bank opposes the filing of the Amended Complaint on the grounds that the proposed amendment is futile, as the Amended Complaint fails to state a claim upon which relief may be granted. For the reasons detailed herein, McKensi's motion to amend the complaint is ALLOWED IN PART AND DENIED IN PART. By October 4, 2010, McKensi may file an amended complaint asserting only the claims raised in Counts Two and Four of his proposed First Amended Complaint.

---

[1] By agreement the parties are treating the plaintiff's First Amended Complaint (Docket No. 18) as a motion to amend the complaint.

## II. STATEMENT OF FACTS

In determining whether a proposed amendment to a complaint would be "futile," the court must determine whether the complaint fails to state a claim upon which relief could be granted.  See Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir. 2009) (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)).  Where, as here, "leave to amend is sought before discovery is complete and neither party has moved for summary judgment, the accuracy of the 'futility' label is gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6)."  Hatch v. Dep't for Children, Youth & Their Families, 274 F.3d 12, 19 (1st Cir. 2001).  Thus, the court will accept as true all well-pleaded facts, and give the plaintiff the benefit of all reasonable inferences.  See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).

As detailed in the proposed First Amended Complaint ("FAC"), McKensi is the owner of property in Everett, Massachusetts.  FAC ¶ 4.  On or about June 28, 2006, McKensi entered into a loan arrangement with Mortgage Electronic Registration Systems, Inc., as nominee for SouthStar, whereby McKensi borrowed funds from SouthStar and the loan was secured by a first and second mortgage on the property.  Id. ¶¶ 5-6.  McKensi contends that SouthStar wrongfully induced him to enter into the loan, and that the terms of the loan are "presumptively unfair" and "doomed for foreclosure" as those terms are defined in Commonwealth v. Fremont Investment & Loan, 452 Mass. 733, 897

N.E.2d 548 (2008), and Commonwealth v. Option One Mortg. Co., 75 Mass. App. Ct. 1110, 916 N.E.2d 422 (2009) (Table).  FAC ¶¶ 8-16.

The Bank is "currently the holder in due course" of the loan pursuant to an assignment from SouthStar.  Id. ¶ 7.  McKensi has failed to comply with the terms of the loan, and the Bank commenced foreclosure proceedings under the powers contained in the first mortgage on the property.  Id.  Plaintiff made various attempts to have the foreclosure voluntarily halted.  See id. ¶¶ 17-20.  Specifically, but without limitation, on October 14, 2009, plaintiff's counsel sent a demand letter pursuant to Mass. Gen. Laws ch. 93A to Litton Loan Servicing ("Litton") and GMAC seeking a loan modification.[2]  Plaintiff characterizes Litton as "the Defendant's agent[.]"  Id. ¶ 19.  However, the attempts at settlement were unsuccessful and the plaintiff commenced suit in Massachusetts Superior Court to halt the foreclosure on October 19, 2009.  Id. ¶ 21.  After the foreclosure was halted, the Bank removed the action to this court on November 12, 2009.

The plaintiff further contends that the Bank, in seeking to foreclose, violated federal laws.  Specifically, according to the proposed FAC, on March 4, 2009, the Department of Treasury began the Home Affordable Modification Program (HAMP), which was adopted by the Bank on April 17, 2009 and which its servicer, Litton, adopted on August 12, 2009.  FAC ¶ 22.  McKensi contends that Litton failed to apply the correct

---

[2] The demand letter may be found at Docket No. 11-3, an Exhibit to Docket No. 11.

criteria in evaluating his loan, and therefore inappropriately refused to modify the loan and halt the foreclosure. Id. ¶¶ 23-30.

In Count One of the proposed FAC, plaintiff alleges that SouthStar entered into a written contract that was "presumptively unfair" and "doomed for foreclosure" and thereby engaged in unfair and deceptive acts and practices in violation of Mass. Gen. Laws ch. 93A, § 2. Id. ¶¶ 31-35. Plaintiff is seeking to hold the Bank liable for SouthStar's 93A violations since the Bank is the assignee of the loan. Id. ¶ 34. In Count Two of the FAC, the plaintiff contends that "[t]he continued acts of the Defendant seeking to foreclose on the mortgage which it know[s] is legally unenforceable constitutes a violation of . . . G.L. c. 93A." Id. ¶ 38. Count Three is entitled "Breach of Contract" and McKensi contends that its contract with SouthStar is illegal, and that the Bank's actions as assignee in seeking to enforce an illegal contract constitute a violation of the law and a breach of contract. Id. ¶¶ 41-44. By Count Four, McKensi is seeking reformation and a declaratory judgment of his allegedly illegal and unenforceable contract. Id. ¶¶ 46-48. In Count Five, the plaintiff contends that the Bank "has violated the obligation of good faith and fair dealing" implied in every contract, "by, among other things, attempting to foreclose on the loan and trying to enforce terms of a contract that are predatory and illegal." Id. ¶ 52. Finally, in Count Six, McKensi contends that he is a "third-party beneficiary" of the HAMP agreement between the Bank and the United States Department of the Treasury, and brings suit for the Bank's alleged failure "to

observe the regulations of the HAMP program, as they apply to Plaintiff," in breach of that agreement. Id. ¶ 56.

Additional facts will be provided below where appropriate.

### III. ANALYSIS

#### A. Mass. Gen. Laws ch. 93A (Counts One and Two)

The prerequisites for bringing an action under Mass. Gen. Laws ch. 93A are well-established. As the court summarized the procedures in Rodi v. So. N.E. Sch. of Law, 389 F.3d 5 (1st Cir. 2004):

> Before bringing suit under that statute, a plaintiff must mail to the defendant a "written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon." Mass. Gen. Laws ch. 93A, § 9(3). This notification must be furnished no fewer than thirty days prior to the filing of suit. *Id.* The statutory notice requirement is not merely a procedural nicety, but, rather, "a prerequisite to suit." Entrialgo v. Twin City Dodge, Inc., 368 Mass. 812, 333 N.E.2d 202, 204 (1975). Furthermore, "as a special element" of the cause of action, it must be alleged in the plaintiff's complaint. *Id.*

Rodi, 389 F.3d at 19. However, the "failure to allege compliance with the statutory notice requirement is not necessarily a death knell for a Chapter 93A claim. Massachusetts courts typically have allowed plaintiffs to amend in order to cure this kind of modest pleading defect." Id. at 20.

In the demand letter, it is "essential that the complainant define the injury suffered and the relief demanded in a manner that provides the prospective defendant with 'an opportunity to review the facts and the law involved to see if the requested relief should

be granted or denied' and enables him to make 'a reasonable tender of settlement.'" Thorpe v. Mut. of Omaha Ins. Co., 984 F.2d 541, 544 (1st Cir. 1993) (quoting Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 288, 475 N.E.2d 727, 736 (1985)) (additional citations omitted). If conduct is not identified in the demand letter, it cannot serve as the basis for relief. Clegg v. Butler, 424 Mass. 413, 423, 676 N.E.2d 1134, 1141 (1997). On the other hand, the failure to identify the precise legal theory in the demand letter does not preclude recovery. See Piccuirro v. Gaitenby, 20 Mass. App. Ct. 286, 292, 480 N.E.2d 30, 34 (1985) ("[t]hat the letter was phrased in terms of representations rather than conflict of interest is not controlling" where the conduct complained of was clearly defined).

In the instant case, McKensi filed the complaint only five days after serving the ch. 93A demand letter. Apparently, this was done so that he could seek a temporary restraining order to halt the scheduled foreclosure sale. As of now, however, more than 30 days have passed since the demand letter. While it would have been more appropriate to commence the action, wait the 30 days and then move to amend to add the ch. 93A claim, the Bank has cited no cases and none have been found where the premature filing of a complaint constitutes a waiver of a plaintiff's right to assert a 93A action. Since the demand letter was served, the Bank has had ample opportunity to assess the merits of the plaintiff's claim and make a settlement offer if appropriate. The timing of the suit is not a basis to dismiss the 93A claim.

While the 93A demand letter is not addressed to the Bank, it is addressed to the Bank's "agent." Since the Bank has not raised this as a basis for dismissing the claim, this court will assume that service on the Bank's agent was sufficient to satisfy the notice requirement to the Bank.

The Bank does contend that the plaintiff cannot hold it liable under ch. 93A for entering into an allegedly unlawful loan, and it cannot be held liable for the wrongful conduct of its predecessor mortgagee. The plaintiff has not cited any cases to support the theory that the Bank can be held liable for unfair and deceptive acts or practices over which it had no control. The Bank did not set the loan terms, and did not enter into a loan that was "presumptively unfair" and "doomed for foreclosure." The Bank did not wrongfully entice the plaintiff to enter into the loan transactions. All of these events occurred before the Bank was involved in any way. Moreover, there is no allegation that the Bank is the alter ego of or otherwise related to SouthStar. Rather, it appears that SouthStar maintains a separate corporate existence from the Bank. Since the Bank did not engage in any of the wrongful conduct described in Count One of the proposed FAC, that Count fails to state a claim. See Ford Motor Credit Co. v. Morgan, 404 Mass. 537, 545, 536 N.E.2d 587, 591 (1989) (while the plaintiff "may have a valid c. 93A claim against the [car] dealer, we reject the claim that such liability should be extended to the dealer's assignee").

Count Two, on the other hand, relates specifically to the Bank's conduct in proceeding with a foreclosure action when it knew or should have known that the mortgage

was legally unenforceable. It is also consistent with the ch. 93A demand letter, which refers to actions which the Bank was allegedly obligated, but failed to undertake, before commencing foreclosure proceedings. See Demand Letter at 3. Since a lender's "actions, in originating loans with terms that in combination would lead predictably to the consequence of the borrowers' default and foreclosure, were within established concepts of unfairness at the time the loans were made, and thus in violation of G.L. c. 93A, § 2," then a mortgagee's actions in knowingly seeking to enforce such terms also states a claim under ch. 93A. Fremont Invest. & Loan, 452 Mass. at 743, 897 N.E.2d at 556. Therefore, the plaintiff may assert the claims raised in Count Two of the proposed First Amended Complaint.

### B.    Breach of Contract (Count Three)

In Count Three of the proposed FAC, McKensi contends that the Bank's efforts to enforce an illegal contract constitutes a breach of the contract. FAC ¶ 43. This court disagrees. While the enforcement of the contract may be actionable under other theories, efforts to enforce the express terms of a contract do not constitute a breach of contract. Therefore, Count Three fails to state a claim.

### C.    Reformation/Declaratory Judgment (Count Four)

By Count Four of the proposed FAC, McKensi is seeking to reform the loan agreement because it is illegal and/or unenforceable. FAC ¶ 46. As the current holder of the mortgage, the Bank is clearly the appropriate defendant for this cause of action. As detailed above, McKensi has asserted a claim under ch. 93A which may entitle him to

relief in the form of reformation of the loan terms. The dispute between the parties concerning the enforceability of the loan documents makes a claim for declaratory judgment appropriate.

The Bank does not directly address this Count in its opposition to the motion to amend the complaint.  However, it is generally the Bank's position that it cannot be held liable for any problems with the loan because it did not originate the loan.  While this may subsequently be proven true, at this juncture this court is not prepared to rule as a matter of law that there is no potential liability on the Bank's part.  Significantly, in Fremont Invest. & Loan, the injunction prohibiting the foreclosure of inappropriate loans was extended to cover any subsequent holder who took an interest in the loans by "assignment, sale, or transfer of ownership rights or servicing obligations by Fremont[.]" 452 Mass. at 741, 897 N.E.2d at 555.  If, in fact, McKensi is able to prove that his loans were "presumptively unfair" or "doomed to foreclosure" and that such loans were "within established concepts of unfairness at the time the loans were made[,]" it remains an open question whether the Bank may be held liable for seeking to enforce loans which it knew or should have known were unfair.  See Fremont, 452 Mass. at 743, 897 N.E.2d at 556.  The plaintiff may proceed with the claims raised in Count Four of the proposed FAC.

**D.     Breach of Obligation of Good Faith and Fair Dealing (Count Five)**

In Count Five of his proposed FAC, McKensi contends that the Bank "has violated the obligation of good faith and fair dealing by, among other things, attempting to

foreclose on the loan and trying to enforce terms of a contract that are predatory and illegal." FAC ¶ 52. This Count fails to state a claim upon which relief may be granted.

It is beyond dispute that "[t]he covenant of good faith and fair dealing is implied in every contract." Uno Rests., Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385, 805 N.E.2d 957, 964 (2004). "The covenant may not, however, be invoked to create rights and duties not otherwise provided for in the existing contractual relationship, as the purpose of the covenant is to guarantee that the parties remain faithful to the intended and agreed expectations of the parties in their performance." Id. In addition, "[i]n determining whether a party violated the implied covenant of good faith and fair dealing, we look to the party's manner of performance. There is no requirement that bad faith be shown; instead, the plaintiff has the burden of proving a lack of good faith." T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 570, 924 N.E.2d 696, 704 (2010) (internal citation omitted). In the instant case, the claim is that the Bank sought to enforce the precise terms of the agreement, and acted according to its rights under the loan documents. While the entire loan may be invalid, acting in accordance with its terms does not constitute a breach of the implied obligation of good faith and fair dealing. Therefore, Count Five fails to state a claim.

### E.     Third-Part Beneficiary (Count Six)

In Count Six of the proposed FAC, McKensi contends that he is a third-party beneficiary of the Government's HAMP contracts with the Bank and can bring suit for breach of that agreement. FAC ¶ 57. However, he has failed to allege any facts which

would support the conclusion that he is the intended beneficiary of the (undefined) contract. Enforcement of a contract by beneficiaries is limited "to those who are *intended* beneficiaries." Miller v. Mooney, 431 Mass. 57, 62, 725 N.E.2d 545, 549-50 (2000). "It must appear from the language and circumstances of the contract that the parties to the contract clearly and definitely intended the beneficiaries to benefit from the promised performance." Id. (internal punctuation and citation omitted). McKensi has not cited to any specific contract terms, much less any that would enable this court to conclude that a mortgagee was intended to be third party beneficiary of the HAMP agreements. Rather, as the court held in Hoffman v. Bank of Am., N.A., No. C-10-2171-SI, 2010 WL 2635773 (N.D. Cal. June 30, 2010), in language equally applicable here:

> Plaintiff makes no persuasive showing that he is a third party beneficiary to the HAMP servicer's agreement. Plaintiff's motion fails to cite any cases finding that borrowers are third party beneficiaries under HAMP or finding language in the HAMP servicer's agreement indicating third parties have enforceable rights under the agreement. To the contrary, the existing case law weighs decisively in favor of defendant: numerous district courts have interpreted identical HAMP agreements and have come to the conclusion that a borrower is not a third party beneficiary.

Id. at *3 and cases cited. See also Zeller v. Aurora Loan Servs., LLC, No. 3:10cv00044, 2010 WL 3219134, at *1 (W.D. Va. Aug. 10, 2010) (HAMP does not provide for a private right of action) (quoting Marks v. Bank of Am., N.A., No. 03:10-cv-08039-PHX-JAT, 2010 WL 2572988, at *5-6 (D. Ariz. June 22, 2010)).

McKensi contends that there are cases pending in this court which raise the same issue but have not been dismissed. See Pl. Reply (Docket No. 25) at 1 n.1. However, the

lawsuits to which plaintiff cites in support of this claim have either disavowed a third-party beneficiary theory or have not asserted one.  See Reyes v. IndyMac Mortg. Servs., FSB, 1:10-cv-10389 (Docket No. 23) at 17-23 (filed Aug. 8, 2010) (plaintiff's amended complaint does not assert a third-party beneficiary claim); Durmic et al v. J.P. Morgan Chase Bank, NA, 1:10-cv-10380 (Docket. No. 14) at 10 (filed Mar. 3, 2010) (plaintiffs have not brought suit to enforce HAMP based on a third-party beneficiary or due process claims . . . ."); Bosque et. al. v. Wells Fargo Bank, N.A., 4:10-cv-10311 (Docket No. 24) at 11 (filed Feb. 23, 2010) ("Plaintiffs have not brought suit to enforce HAMP based on either a third-party beneficiary or a due process claim."); Johnson v. BAC Home Loans Servicing, LP, 1:10-cv-10316 (Docket. No. 13) at 6-7(filed Feb. 23, 2010) ("The stimulus bill, the SPA, and the HAMP Program Documentation . . . do not form any part of the legal predicate for Plaintiffs' claims which sound in contract.  [T]he existence or lack thereof of a private right of action 'under HAMP' or the viability of third party beneficiary claims under the SPA are irrelevant.").  Since McKensi has not alleged sufficient facts to establish that he is an intended third party beneficiary of the HAMP agreements, Count Six of the proposed FAC fails to state a claim.

## IV.  CONCLUSION

For all the reasons detailed herein, the plaintiff's motion to amend the complaint (Docket No. 18) is ALLOWED IN PART and DENIED IN PART.  Plaintiff may file an amended complaint asserting only the claims raised in Counts Two and Four of the proposed FAC.  The amended complaint shall be filed no later than October 4, 2010.

                 / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge